IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| UNITED STATES OF AMERICA, | ) | Crim. No. 02-00547 SOM |
|---|---|---|
| | ) | Civ. No. 21-00212 SOM/RT |
| Plaintiff-Respondent, | ) | |
| | ) | ORDER DENYING DEFENDANT'S |
| vs. | ) | PETITION FOR WRIT OF CORAM |
| | ) | NOBIS; ORDER DENYING AS |
| KENNETH CHARLES McNEIL, | ) | UNNECESSARY DEFENDANT'S |
| | ) | MOTION FOR DETERMINATION OF |
| Defendant-Petitioner. | ) | APPLICABLE LAW |
| _____ | ) | |

**ORDER DENYING DEFENDANT'S PETITION FOR WRIT OF CORAM NOBIS;
ORDER DENYING AS UNNECESSARY DEFENDANT'S
MOTION FOR DETERMINATION OF APPLICABLE LAW**

**I.     INTRODUCTION.**

This is Defendant Kenneth Charles McNeil's fifth post-trial motion or petition for collateral relief from his conviction and judgment. Because McNeil fails to show any trial error of a fundamental nature and/or why he could not have raised his arguments earlier, his latest petition is denied.

**II.    PROCEDURAL HISTORY.**

On December 8, 2002, Defendant Kenneth Charles McNeil was charged in a one-count indictment with traveling in interstate commerce with the intent to engage in conduct that violated a protective order in violation of 18 U.S.C. § 2262(a)(1).

A jury trial was conducted before visiting judge Ann Aiken. On July 25, 2003, the jury convicted McNeil. *See* ECF No. 54. On June 4, 2004, Judge Aiken sentenced McNeil to 51 months

of imprisonment, 3 years of supervised release, and a $100 special assessment.  *See* ECF No. 67 (Minutes of Sentencing Proceeding); ECF No. 69 (Judgment).

McNeil appealed, and the Ninth Circuit Court of Appeals affirmed the decision but remanded for resentencing in light of *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Ameline*, 409 F.3d 1073, 1084-85 (9th Cir. 2005) (en banc). *See* ECF Nos. 70 and 82 (Appellate No. 04-10379); *United States v. McNeil*, 141 F. App'x 552, 554 (9th Cir. 2005).

McNeil was then resentenced to 50 months of imprisonment, 3 years of supervised release, and a $100 special assessment.  *See* ECF No. 88 (Minutes of Sentencing Proceeding); ECF No. 89 (Judgment).

McNeil filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  *See* ECF No. 102.  On July 9, 2010, Judge Aiken denied that motion.  *See* ECF No. 108.  McNeil appealed, and the Ninth Circuit affirmed on the basis that his motion was untimely.  *See* ECF Nos. 117 and 125 (Appellate No. 10-17216); *United States v. McNeil*, 451 F. App'x 694, 694 (9th Cir. 2011).  On October 1, 2012, the United States Supreme Court denied McNeil's petition for certiorari.  *See* ECF No. 129.

On October 11, 2012, ten days after the Supreme Court denied certiorari with respect to his § 2255 motion, McNeil filed his first petition for writ of coram nobis.  *See* ECF No. 131.  On

November 2, 2012, Judge Aiken denied the petition and subsequently denied a motion to reconsider. *See* ECF Nos. 131 and 141. McNeil appealed, and the Ninth Circuit affirmed. *See* ECF Nos. 137 and 144 (Appellate No. 13-15020); *United States v. McNeil*, 557 F. App'x 687 (9th Cir. 2014). On October 9, 2014, the United States Supreme Court denied McNeil's petition for certiorari. *See* ECF No. 147.

The next day, October 10, 2014, McNeil filed his second petition for writ of coram nobis. *See* ECF No. 146. On January 20, 2016, Judge Aiken denied this second petition. *See* ECF No. 149. She subsequently denied a motion to reconsider. *See* ECF No. 153. McNeil appealed, and the Ninth Circuit affirmed. *See* ECF Nos. 154 and 164 (Appellate No. 16-15472); *United States v. McNeil*, 693 F. App'x 554 (9th Cir. 2017) (ruling that McNeil's challenge to jury instruction regarding intent to violate the protective order did not show an error of fundamental character).

On January 25, 2018, the day after the mandate issued from the Ninth Circuit with respect to Appellate No. 16-15472, McNeil filed his third petition for writ of coram nobis. *See* ECF Nos. 165-66. On December 7, 2018, Judge Aiken denied this third petition. *See* ECF No. 171. McNeil again appealed, and the Ninth Circuit again affirmed. *See* ECF Nos. 180 and 192 (Appellate No. 19-15111); *United States v. McNeil*, 812 F. App'x 515 (9th Cir. 2020). On appeal, McNeil asserted that he could not have

3

traveled to Hawaii with an intent to violate the protective order because he did not believe there would be an opportunity to violate it.  The Ninth Circuit ruled that McNeil did not demonstrate valid reasons for not making the argument on direct appeal or in his § 2255 motion.  *Id.* at 516.  The Ninth Circuit further ruled, "McNeil has also failed to meet his burden of demonstrating the jury erred at all in convicting him, much less that it was an error of the most fundamental character."  *Id.* (quotation marks and citation omitted).  It noted that intent is a factual determination made by the jury.  *Id.*  Here, the jury instructions were uncontested.  *Id.*  It ruled, "Based on the evidence presented at the trial, a reasonable jury could conclude that McNeil traveled to Hawaii with intent to engage in conduct violative of the protective order."  *Id.*  The United States Supreme Court denied McNeil's petition for certiorari on April 19, 2021.  *See* 2021 WL 1520849.

During the pendency of the most recent appellate proceedings, this case was assigned to this judge.  *See* ECF No. 190.

On April 28, 2021, nine days after the Supreme Court denied his petition for certiorari, McNeil filed his fourth and latest petition for writ of coram nobis.  *See* ECF No. 197.

## III.     EVIDENCE INTRODUCED AT TRIAL.

J.B., a 12-year-old boy, lived with his mother and stepfather in the town of Mililani on Oahu, Hawaii. *See* ECF No. 202-1, PageID #s 1437, 1439. McNeil, the stepfather's cousin, lived in Houston, Texas. *Id.*, PageID # 1440; ECF No. 202-2, PageID # 1675.

J.B.'s parents became concerned about the appropriateness of McNeil's relationship with J.B. *See id.*, PageID # 1448. On September 25, 2001, after a hearing, the District Court for the First Circuit, State of Hawaii, issued an Order Granting Petition for Injunction Against Harassment. *See* ECF Nos. 198, PageID #s 1266-67; ECF No. 202-2, PageID # 1837-64 (transcript of proceeding). For a period of three years, this protection order prohibited McNeil from intentionally being within 100 yards of J.B. *Id.*

On or about May 17, 2002, McNeil sent an email to J.B.'s stepfather, asking to meet both parents at 6:30 p.m. at the Chili's restaurant in Mililani on May 22, 2002, which is located near the Mililani Town Center. *See* ECF No. 198, PageID # 1265; ECF No. 202-1, PageID # 1613. The parents did not respond. *See id.* PageID # 1610.

On or about May 22, 2002, McNeil flew to Honolulu. *See* ECF No. 198, PageID # 1264. After landing, McNeil went to the Mililani Chili's to see whether J.B.'s parents would show up.

*Id.* J.B.'s mom showed up and, with McNeil's knowledge, recorded the meeting. She told McNeil why she wanted him to stay away from J.B. See *id.*, PageID #s 1610-11; ECF No. 202-2, PageID #s 1886-1910 (unofficial transcript of meeting taken from recording).

On May 26, 2002, J.B. rode his bicycle to the Mililani Town Center to buy something. *See* ECF No. 202-1, PageID # 1513. While there, he ran into McNeil outside of RadioShack. *See* ECF No. 202-1, PageID #s 1614. McNeil started to talk with J.B., who told him they were not supposed to be talking and told McNeil to go away. *See id.*, PageID # 1615. When J.B. tried to ride away, McNeil put his hands on the bicycle's handle bars and J.B.'s wrist. J.B. jerked away and then rode home. *See id.*, PageID # 1616. When J.B. got home, he was distraught, teary-eyed, and shaking. *See id.*, PageID # 1514. He told his parents that he had run into McNeil, and they called the police. *See id.*, PageID # 1617.

According to McNeil, he was at the Mililani Town Center to buy a cord for his laptop. *See* ECF No. 202-1, PageID #s 1612-13. McNeil claimed that he was in Hawaii for a business meeting with a money manager, Charles Lanphier. *See* ECF No. 202-1, PageID # 1609. However, he admitted that he was using vacation time for the trip. *Id.* While confirming that he met with McNeil on May 23, 2002, Lanphier said that McNeil told him that his trip

6

was to visit family (rather than primarily to attend the meeting). *See* ECF No. 202-2, PageID #s 1733, 1736. McNeil had not told Jay Comeaux, the co-president of his company, that he was going to Hawaii to meet with Lanphier. *See id.*, PageID # 1741. Comeaux testified as a rebuttal witness that McNeil was not reimbursed by the company for any expenses relating to the meeting with Lanphier. *See id.*, PageID # 1742.

The jury convicted McNeil of having violated 18 U.S.C. § 2262(a)(2). *See* ECF No. 54.

## IV. WRIT OF CORAM NOBIS STANDARD.

To the extent McNeil seeks a determination of the law applicable to a coram nobis petition, *see* ECF No. 199, that request is denied as unnecessary. This court's practice is to set forth the applicable law in its orders. In this case, the law pertaining to coram nobis petitions is set forth below.

The 1946 amendments to Rule 60(b) of the Federal Rules of Civil Procedure abolished several common law writs, including the writ of coram nobis. *See Doe v. I.N.S.*, 120 F.3d 200, 202 (9th Cir. 1997). In *United States v. Morgan*, 346 U.S. 502, 511 (1954), the Supreme Court held that, despite that abolishment, district courts still retained limited authority to issue common law writs, including writs of coram nobis in collateral criminal proceedings. *See also* 28 U.S.C. § 1651(a) ("The Supreme Court and all courts established by Act of Congress may issue all writs

necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.").

The common law writs survive "only to the extent that they fill 'gaps' in the current systems of postconviction relief." *United States v. Valdez-Pacheco*, 237 F.3d 1077, 1079 (9th Cir. 2001). "[T]he writ of coram nobis is a highly unusual remedy, available only to correct grave injustices in a narrow range of cases where no more conventional remedy is applicable." *United States v. Riedl*, 496 F.3d 1003, 1005 (9th Cir. 2007). The writ is "extraordinary, used only to review errors of the most fundamental character." *Id.* (quotation marks and citations omitted); *see also Carlisle v. United States*, 517 U.S. 416, 429 (1996) ("[I]t is difficult to conceive of a situation in a federal criminal case today where a writ of coram nobis would be necessary or appropriate." (quotation marks, brackets, and citation omitted)). Errors are of the most fundamental character when they render a proceeding invalid. *See Hirabayashi v. United States*, 828 F.2d 591, 604 (9th Cir. 1987).

Unlike claims under 28 U.S.C. § 2255, which applies only when convicted defendants are in "custody," the writ of coram nobis allows a defendant to attack a conviction when the defendant has completed a sentence and is no longer in custody. *See Matus-Leva v. United States*, 287 F.3d 758, 761 (9th Cir. 2002) (holding that a prisoner who is in custody may seek relief

under § 2255, not under the writ of coram nobis); *Estate of McKinney v. United States*, 71 F.3d 779, 781 (9th Cir. 1995). It "provides a remedy for those suffering from the lingering collateral consequences of an unconstitutional or unlawful conviction based on errors of fact and egregious legal errors." *McKinney*, 71 F.3d at 781.

To qualify for coram nobis relief, a petitioner must establish all of the following:

> (1) a more usual remedy is not available;
> (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III; and (4) the error is of the most fundamental character.

*Hirabayashi v. United States*, 828 F.2d 591, 604 (9th Cir. 1987); accord *Matus-Leva*, 287 F.3d at 760 (same); *McKinney*, 71 F.3d at 781-82 (same). "Because these requirements are conjunctive, failure to meet any one of them is fatal." *Matus-Leva*, 287 F.3d at 760.

A petitioner may not seek coram nobis relief when § 2255 relief is barred by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *See Matus-Leva*, 287 F.3d at 761 ("A petitioner may not resort to coram nobis merely because he has failed to meet the AEDPA's gatekeeping requirements. To hold otherwise would circumvent the AEDPA's overall purpose of expediting the presentation of claims in federal court and enable

prisoners to bypass the limitations and successive petitions provisions.").

**V.     ANALYSIS.**

McNeil claims that the Government has made two statements that constitute new evidence establishing his innocence. Neither statement establishes an error of fundamental character. Additionally, McNeil fails to explain why he could not have brought his argument arising out of 2010 statements earlier. Accordingly, McNeil's fourth petition for writ of coram nobis is denied.

McNeil was convicted of having violated 18 U.S.C. § 2262(a)(1), which stated at the time of his conviction:

> A person who travels in interstate or foreign commerce, or enters or leaves Indian country, with the intent to engage in conduct that violates the portion of a protection order that prohibits or provides protection against violence, threats, or harassment against, contact or communication with, or physical proximity to, another person, or that would violate such a portion of a protection order in the jurisdiction in which the order was issued, and subsequently engages in such conduct, shall be punished . . . .

18 U.S.C. § 2262(a)(1) (effective Oct. 28, 2000, to Jan. 4, 2006).

At trial, the jury was instructed:

> In order for you to find the defendant guilty of the offense charged against him in the indictment, the government must prove each of the following elements beyond a reasonable doubt:

>     First, that there was a protection order that prohibited and provided protection against the defendant contacting, communicating with, or being in the physical proximity to another person;
>
>     Second, that the defendant intentionally engaged in conduct that violated the protection order;
>
>     Third, before violating the protection order the defendant traveled in interstate commerce by crossing a state boundary; and
>
>     Fourth, at the time the defendant crossed the state boundary, he had the intent to engage in conduct that would violate the protection order.
>
>     With respect to the first element, the parties have stipulated that the order granting petition for injunction against harassment filed on September 25th, 2001, . . . is a protection order within the meaning of the statute, Title 18, United States Code, Section 2262, sub (a}, sub (1).
>
>     With respect to the fourth element, it is possible that the defendant may have had more than one purpose in coming to Hawai`i. It is not necessary for the government to prove that the sole and single purpose of the defendant's travel to Hawai`i was to engage in conduct that would be in violation of the protection order. You may find that the intent element has been satisfied if you are persuaded that one of the dominant purposes that the defendant had in coming to Hawai`i was to engage in conduct that would be in violation of the protection order.

ECF No. 202-2, PageID #s 1811-12.

### A. The Government's Statement That McNeil Probably Did Not Know When He Was On The Plane That He Would Run Into J.B. Four Days Later Does Not Support the Issuance of a Writ of Coram Nobis.

On appeal from the denial of his third coram nobis petition, McNeil argued that he lacked the requisite intent to violate the protective order because he did not expect J.B. to be at the shopping center at the time he ran into him. *See* ECF No. 202-4, PageID # 1990. The Government responded by arguing that it "did not have to show that McNeil intended [to] violate the protection order at a specific time and place (such as the mall) or in a specific manner. Of course, the government did not have to show that McNeil knew [J.B.] would be at the mall on May 26, 2002." ECF No. 198, PageID # 1140. The Government stated: "On May 22, 2002, while he was still on the airplane, he probably did not know that [J.B.] would go to the mall alone on May 26, 2002, but that does not translate into a lack of knowledge that he might be able to act in violation of the protection order." *Id.*

In this fourth coram nobis petition, McNeil argues that the Government failed to disclose pretrial that, "[o]n May 22, 2002, while he was still on the airplane, he probably did not know that [J.B.] would go to the mall alone on May 26, 2002." *See* ECF No. 197, PageID # 1112. McNeil argues that, had the Government made that concession at trial, there would not have been sufficient evidence to convict him. *Id.*, PageID #s 1113-14.

12

McNeil argues that the fourth element the jury was instructed on could not have been proven beyond a reasonable doubt had the Government made that concession at trial. *Id.* The fourth element the jury was instructed on states, "at the time the defendant crossed the state boundary, he had the intent to engage in conduct that would violate the protection order." McNeil is not challenging the instruction itself. *Id.*

McNeil fails to show any error, let alone one of a fundamental character. The Government's so-called concession is nothing more than logic or common sense. Absent having arranged to meet J.B. ahead of time, McNeil could not have known at the time he was on the plane to Hawaii that J.B. would be at the mall four days later. The Ninth Circuit has already determined that there was sufficient evidence from which a jury could find the requisite intent to support a § 2262(a)(1) conviction, stating: "Based on the evidence presented at the trial, a reasonable jury could conclude that McNeil traveled to Hawaii with intent to engage in conduct violative of the protective order." *McNeil*, 812 F. App'x at 516. In other words, McNeil could be convicted if he traveled to Hawaii with the intent to violate the protective order. He did not need to know exactly when or how he would do so. The Government's post-trial statement about what McNeil probably knew or did not know on the plane does not negate the intent element.

To the extent McNeil makes other arguments about the definition of intent, he fails to show why he did not or could not have raised those issues on direct appeal or in his § 2255 motion. Those arguments therefore fail because McNeil fails to satisfy the second prong of the coram nobis standard--valid reasons exist for not attacking the conviction earlier. *See Hirabayashi*, 828 F.2d at 604.

> **B. The Government's Statement That Comeaux's Testimony Regarding Lanphier Was Irrelevant or Not Critical Does Not Support the Issuance of a Writ of Coram Nobis.**

In footnote 1 on page 12 of the Government's opposition (dated May 26, 2010) to McNeil's § 2255 motion, the Government stated that "the issue at trial was whether or not **one** of McNeil's dominant reasons for travel . . . to Hawaii was to see [J.B.] in violation of the protection order, it did not have to be the sole or even the primary one. Thus, the entire issue raised herein regarding Mr. Comeaux's testimony regarding Mr. Lanphier is irrelevant." ECF No. 106, PageID # 215. The Government later stated that Comeaux's testimony "was not critical" and that Comeaux was "only a rebuttal witness." *Id.*, PageID # 217. McNeil now argues that he would not have been convicted if the Government had told the jury that Comeaux's testimony was irrelevant or not critical. *See* ECF No. 197, PageID # 1114. This argument does not justify coram nobis

14

relief.

McNeil fails to satisfy the second prong of the coram nobis standard, as he fails to demonstrate valid reasons for not attacking the conviction earlier. *See Hirabayashi*, 828 F.2d at 604. The Government made the statement in a brief filed with this court more than 11 years ago. McNeil actually raised this argument to the Ninth Circuit in his most recent appeal, which the Ninth Circuit rejected. *See* ECF No. 202-4, PageID # 1998; *United States v. McNeil*, 812 F. App'x 515 (9th Cir. 2020). Not only does McNeil fail to demonstrate a valid reason for not having made the argument earlier, the Ninth Circuit's decision is now the law of this case and binds this court with respect to that argument.

McNeil also fails to show an error of a fundamental character. McNeil takes the Government's statement out of context. The Government was only saying that, even without Comeaux's testimony, there was sufficient evidence to support the conviction. With respect to the fourth element for a § 2262(a)(1) crime, the jury was instructed:

> [I]t is possible that the defendant may have had more than one purpose in coming to Hawai`i. It is not necessary for the government to prove that the sole and single purpose of the defendant's travel to Hawai`i was to engage in conduct that would be in violation of the protection order. You may find that the intent element has been satisfied if you are persuaded that one of the dominant purposes that the defendant had

15

> in coming to Hawai`i was to engage in conduct
> that would be in violation of the protection
> order.

ECF No. 202-2, PageID # 1812. Because Comeaux's testimony only rebutted McNeil's claim that he was in Hawaii on business, it was unnecessary to support the conviction. A jury could have found that one of the dominant purposes McNeil had in coming to Hawaii was to violate the protection order even without Comeaux's testimony.

This is exactly what Judge Aiken stated in denying McNeil's § 2255 motion on July 9, 2010. *See* ECF No. 108 (construing § 2255 motion as a coram nobis petition and stating that "Comeaux's testimony was not critical to petitioner's conviction"). The Ninth Circuit has already held, "Based on the evidence presented at the trial, a reasonable jury could conclude that McNeil traveled to Hawaii with intent to engage in conduct violative of the protective order." *See McNeil*, 812 F. App'x at 516. McNeil's argument about the relevance of Comeaux's statement does not affect the sufficiency of the evidence.

### C. The Government's Statement That Its Decision to Prosecute Him had Nothing to Do With His Employment Does Not Support the Issuance of a Writ of Coram Nobis.

It is not clear from McNeil's petition whether he is basing his coram nobis petition on the Government's 2011 statement in its Answering Brief to the Ninth Circuit in Appellate No. 10-17216. There, the Government stated, "McNeil

16

terrified [J.B.] and that is why the government decided to prosecute him. It had absolutely nothing to do with McNeil's employment . . . . It had to do solely with the fact that McNeil refused to obey a court order . . . ." ECF No. 198, PageID # 1173. While McNeil mentions this statement in his petition, *see* ECF No. 197, PageID # 1111, he makes no argument about it. He certainly does not explain why he did not or could not raise the issue earlier or why it amounts to an error of a fundamental character. *See Hirabayashi*, 828 F.2d at 604.

Perhaps McNeil did not articulate his argument about the Government's reasons to prosecute him because he had already made and lost that argument to the Ninth Circuit in his first coram nobis petition. Appellate No. 13-15020. In his Opening Brief in that case, he argued that the Government committed a *Brady* violation by failing to disclose that his employment had nothing to do with the decision to prosecute him. *See* ECF No. 202-3, PageID #s 1953-54. The Ninth Circuit rejected that argument. *See United States v. McNeil*, 557 F. App'x 687 (9th Cir. 2014). McNeil also made this argument in his most recent appeal and the Ninth Circuit again rejected it. *See* ECF No. 202-4, PageID # 1998; *United States v. McNeil*, 812 F. App'x 515 (9th Cir. 2020).

**VI.    CONCLUSION.**

The court denies McNeil's fourth coram nobis petition

17

without a hearing because the record conclusively shows that McNeil is not entitled to relief.  See 28 U.S.C. § 2255(b); *United States v. Taylor*, 648 F.2d 565, 573 n.25 (9th Cir. 1981) ("Whether a hearing is required on a coram nobis motion should be resolved in the same manner as habeas corpus petitions.").  The Clerk of Court is directed to enter judgment against McNeil in Civil No. 21-00212 SOM/RT and to close the civil case.

        IT IS SO ORDERED.

        DATED: Honolulu, Hawaii, July 12, 2021.



    /s/ Susan Oki Mollway
    Susan Oki Mollway
    United States District Judge

United States v. McNeil, Crim No. 02-00547 SOM; Civ. No. 21-00212 SOM/RT; ORDER DENYING DEFENDANT'S PETITION FOR WRIT OF CORAM NOBIS; ORDER DENYING AS UNNECESSARY DEFENDANT'S MOTION FOR DETERMINATION OF APPLICABLE LAW